JUDGE ROANE.
I concur in the decree just read, as agreed upon in conference; and as explanatory of my ideas on the case, will subjoin a few observations.
The spirit of the decisions of this Court in relation to suits for freedom, while if neither abandons the rules of evidence, nor the rules of law as applying to property, with a becoming liberality respects the merit of the claim, and the general imbecility of the claimants. On this ground it is, that parties of this description are not confined to the rigid rules of proceeding, and that their claims are not repudiated by the Court, as long as a possible chance exists, that they can meet with a successful issue. Instances of the former kind are *236 numerous: and, of the latter, it will be seen in the case of Abby v. Woodly, (in MS.) that this Court only determined against the paupers in the last resort, and after every possible source of redemption should be found to have failed.
In the case before us, the spirit of the above principles will induce me to consent that a full account of Benskin H. Hilliard’s administration on John Timberlake’s estate shall be taken, under the order of the Court of Chancery, although it is not specially prayed for in the bill; that an account be also taken of Richardson’s administration on Prances Timberlake’s estate, although the account stated in the record has been accepted by the appellant’s counsel; and that the claim of the plaintiffs be not utterly rejected by the Court, until it is found that no possibility exists of effectuating their emancipation. This I will consent to, although, as at present advised by the record, I apprehend that no part of the estate of John or of Prances Timberlake can be withheld from the pai'ment of their just debts.
As to the question whether the sale of the negroes by Benskin H. Hilliard to Prances Timberlake was fraudulent, and a mere cover to deceive creditors, I should not pay much respect to Benskin H. Hil-liard’s testimony relative thereto; not only because he was a party to the fraud, if any existed, and ought not to be admitted to allege his ‘own turpitude, but, also, because he was, or might have thought himself, interested, in giving that colour to the transaction. The testimony of the other witnesses as to this subject, is only of their opinions and belief.
But, in my view of the case, it is not material to decide whether this were a fraudulent, or a bona fide transaction. The property in question has been attached and sold under a regular judgment and execution; and the party praying relief against it can only be received on the terms of doing justice, that is, of paying a debt which John Timberlake owed to Richard Hilliard, under whom the defendant Colin claims, and which Prances Timberlake owed to the estate of John Timberlake; having received from his executor the property in question without paying any consideration therefor. It is not unworthj' of remark, also, that this debt of Richard Hil-liard’s seems recognized in the will of Prances Timberlake, and, in some sense, adopted as her own. As to Didier Colin, the intestate of one of the appellees, it is not shewn that he purchased mala fide. He admits it is true, that he had heard that the complainants were sold bjr Benskin H. Hilliard to Prances Timberlake, but adds that he also heard that she was only nominally the purchaser, and had paid no consideration for them, and was consequently a trustee for John Timberlake’s creditors: he also states that he had heard that Prances Timberlake died more in debt than she was worth, and therefore could not emancipate the plaintiffs.
This admission must be taken altogether, and being so taken, certainly cannot import that Colin had any knowledge of the complainants’ right to freedom: but, what is still more conclusive is, that this infor mation and understanding on the subject i not applied to the period of his purchase and, therefore, at that time he may hav been, for any thing that appears, complete! ignorant of the complainants’ pretensions Colin’s administratrix, therefore, is neve: to lose her lien upon these negroes, until ; fund is found for their redemption, ii which case she is to be paid the principa money with interest.
My opinion, therefore, is that the decrei of dismission be reversed, (unless it be ai to the defendant Richard Hilliard,) and th< cause sustained; that accounts of the ad ministration of both estates be taken, unde: the order of the Court of Chancery, including a further inquiry, if desired, into the fair ness of the sale of the land by Richardson the administrator of Prances Timberlake and that liberty be reserved to any oi all of the negroes, whose *emancipa' tion was contemplated by Prances Timberlake’s will, to become parties to this suit, within a time to be prescribed by the Court of Chancery, and to make the neces' sary defendants; that, if, in the event o: the inquiry to be so instituted, it be founc that there is estate enough of the said Johr Timberlake or Prances Timberlake, (specific legacies excepted,) to redeem entirely the negroes so becoming plaintiffs, that, in thal case, their freedom be declared absolute by the Court of Chancery; or, if only in part, that then such parties plaintiff be exposed to sale for such a period of time as may raise the funds requisite, and, after the expiration of that period, be declared to be free; my opinion being that all the negroes contemplated by Prances Timberlake’s will are equally entitled to their freedom, and that they should have it partially, if they cannot receive it absolutely; but, in the event that the whole values of the said plaintiffs shall be found to be necessary to pay the debts aforesaid, that then the bill be dismissed, and the legal rights of the defendants remain undisturbed; and that such of the said slaves, as do not apply to be made co-plaintiffs within the time to be prescribed as aforesaid, be barred of their claim to freedom under the will of Prances Timberlake aforesaid.
JUDGE PEEMING expressd his approbation of the decree which had been reported.